# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| DARRELL L. HENDERSON,<br><br>         Plaintiff,<br><br> v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>         Defendant. | 3:18-cv-00050-MMD-CBC<br><br><br><u>**REPORT AND RECOMMENDATION**</u><br><u>**OF U.S. MAGISTRATE JUDGE**[1]</u> |

   This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Henderson's application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. Ch. 7. Currently pending before the Court is Henderson's motion for remand. (ECF No. 15.) In this motion, Henderson seeks the reversal of the administrative decision and remand for an award of benefits. (*Id.*) The Commissioner filed a response to Henderson's motion and a cross-motion to affirm. (ECF No. 20.)  For the reasons set forth herein, the Court recommends that Henderson's motion for remand, (ECF No. 15), be denied, and the Commissioner's cross-motion to affirm, (ECF No. 20), be granted.

**I. STANDARDS OF REVIEW**

  A. <u>Judicial Standard of Review</u>

   This Court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party,

---

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the Court must look at the administrative record as a whole, weighing both the evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2003). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Shalala,* 50 F.3d at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if substantial evidence supports

the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

### B. Standards Applicable to Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of his claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than

a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p.1 If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. To the extent that objective medical evidence does not substantiate statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

After making the RFC determination, the ALJ must then turn to step four in order to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(f), 416.920(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If he is able to do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

**II.    CASE BACKGROUND**

   A.    Procedural History

On October 16, 2014, Henderson protectively filed for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act, alleging a disability onset date of November 1, 2006. (Administrative Record ("AR") 159-165.) The Social Security Administration initially denied Henderson's application on February 11, 2015, and upon reconsideration on June 10, 2015.  (AR 94-98, 105-105.)  Henderson subsequently requested an administrative hearing.  (AR 33-60.)

On September 30, 2016, Henderson and his attorney appeared at a hearing before an Administrative Law Judge. (AR 16.)[2] Jacklyn A. Benson-Dehaan, a vocational expert ("VE"), also appeared at the hearing. (*Id.*) The ALJ issued a written decision on November 23, 2016, finding that Henderson was not disabled because he could perform past relevant work as well as other work existing in significant numbers. (AR 15-27.) Henderson appealed, and the Appeals Council denied review on November 30, 2017. (*Id.* at 1–6.) Accordingly, the ALJ's decision became the final decision of the Commissioner. Having exhausted all administrative remedies, Henderson filed a complaint for judicial review on January 29, 2018. (ECF No. 1.)

B.  ALJ's Decision

In the written decision, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 22-32.) Ultimately, the ALJ disagreed that Henderson has been disabled from November 1, 2006, through the present date. (*Id.* at 16.) The ALJ held that, based on Henderson's RFC, his age, education and work experience, he was able to perform past work and there were jobs in the national economy that he could perform. (*Id.* at 31.)

In making this determination, the ALJ started at step one. Here, the ALJ found that Henderson engaged in substantial gainful activity from the alleged onset date of November 1, 2006 through 2014. (*Id.* at 18.)[3] At step two, the ALJ found that Henderson had the following severe impairments: lumbar and cervical spondylosis; postherpetic neuralgia of the right shoulder blade with radiculopathy; postherpetic polyneuropathy; and right median ulnar neuropathy per 20 C.F.R. § 404.1520(c) and 416.920(c). (*Id.*) At step three, the ALJ found that Henderson did not have an impairment or combination of impairments that either met or medically equaled the severity of those impairments listed

---

[2]  At the hearing, Henderson amended his onset date to March 1, 2006. (AR 36.)

[3]  Although Henderson amended his onset date, the ALJ made clear he considered all medical evidence dating back to Henderson's initial onset date of November 6, 2006 in rendering his opinion. (AR 15).

6

in 20 C.F.R. Part 404, Subpart P, Appx. 1; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (*Id.* at 21.) Next, the ALJ then determined Henderson's RFC. The ALJ determined that Henderson had an RFC to perform less than a full range of sedentary work, as defined by 20 C.F.R. § 404.1567(a), which required a sit/stand option, allowing him to sit or stand alternatively at will up to fifteen (15) minutes every two hours. (*Id.* at 22.) According to the ALJ's RFC determination, Henderson was capable of "lift[ing] and/or carry[ing] 10 pounds occasionally and less than 10 pounds frequently, [sic] sit[ting] for six hours in eight-hour workday; [sic] stand[ing] and walk[ing] for two hours in an eight-hour work day . . . frequently climbing [sic] stairs and ramps; . . . frequent balancing, stooping, and kneeling; occasional crouching; . . . [and] occasional above the shoulder level and above the head reaching with the right upper extremity." (*Id.*) However, he should "never climb ladders or scaffolds . . . [and] never crawl[sic]," and he "must avoid concentrated exposure to moving mechanical parts and unprotected heights." (*Id.*)

Based on this RFC determination, the ALJ determined Henderson was capable of performing past relevant work. (*Id.* at 26.) In addition, the ALJ found Henderson not disabled and denied his application for a period of disability and disability insurance benefits. (*Id.* at 28.)

**III.  DISCUSSION**

There are three issues raised on appeal: (1) whether the ALJ mischaracterized the medical evidence; (2) whether the ALJ properly discounted Henderson's subjective testimony; and, (3) whether the ALJ conducted a proper transferrable skills analysis. (ECF No. 15.)  The Court will address each issue in turn.

  A. <u>Medical Evidence</u>

First, Henderson argues the ALJ mischaracterized and misinterprets the medical evidence. (ECF No. 15 at 4-6.) Specifically, Henderson argues that the ALJ improperly interpreted notes from May 4, 2016 and June 28, 2016; and concluded Henderson's physical health symptoms are "relatively stable and controlled with the prescribed treatment regimen."  (*Id.* at 4-6.)  Instead, Henderson argues that a treatment note from

July 21, 2015 is a better indicator of his symptoms. (*Id.* at 6.) Meanwhile, the ALJ pointed out that numerous records report the spinal cord stimulator helped, as did other treatments including trigger point injections, and medications. (AR 22-24.) However, Henderson argues the ALJ disregards portions of the same records that include Henderson's continued allegations of constant, intractable pain. (ECF No 15. at 4-9.)

An independent review of the record demonstrates reoccurring inconsistencies between reports, and sometimes even within the same report. For example, the record indicates: Henderson's pain decreased with physical therapy (AR 426); that at one point the spinal cord stimulator afforded him 80% relief (AR 431, 529) and that even after the surgical implant he still received "good coverage" from the spinal cord stimulator (Ex. 8F at pp. 79-83; AR 634-35; EX. 13F at pp. 33-35) and his "chronic pain management is improving and he can now go up to a week [without] his MS Contin at times" (Ex. 9F at pp. 1-2[4]); that sitting helps relieve his pain (AR 453-54, AR 552, AR 556-60); that he "denied problems with coordination or difficulty walking" (AR 508); and, that his medications are beneficial to his pain and functioning (AR 634-35) – he was even able to lower his medication dosage. (Ex. 9F at pp. 1-2; AR 556-60.) At the same time, the record indicates: Henderson feels the spinal cord stimulator has not helped and that his symptoms have not changed (AR 648, 679-80); he reports high subjective pain on a scale of 1 to 10 and low subjective functionality on a percentage scale (AR 436-37, 673, 702); he has trouble sitting and walking which exacerbate his pain (AR 42-43, 48-53, 315, 646); and that his symptoms remain severe. (AR 648, 679-80, 702.)

Furthermore, the ALJ cited other instances in the record indicating Henderson's physical health symptoms were being managed by the prescribed treatment. (AR 24-25.) Henderson argues for another interpretation of the evidence but does not establish that the ALJ erred in fact or law in analyzing the evidence. The ALJ, not this Court, is

---

[4] Where the Court cites to specific exhibits rather than the appropriate AR number, it is because the AR number was obscured and could not be determined.

responsible for reviewing the evidence and resolving conflicts or ambiguities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). While another ALJ may have reached a different conclusion, this ALJ's conclusion is supported by substantial evidence. Where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Here, the ALJ properly weighed the medical evidence.

B.    Henderson's Subjective Credibility

Next, Henderson contends that, the ALJ did not properly assess his subjective symptom testimony. (ECF No. 15 at 6-9.) In doing so, Henderson argues that the ALJ's reasons for rejecting Henderson's symptom testimony were improper. (*Id.*) First, Henderson argues that the ALJ improperly relied on the stability of Henderson's symptoms. (*Id.* at 7.) Second, Henderson argues that the ALJ improperly relied upon Henderson's work activity by failing to appreciate that Henderson was self-employed and therefore his salary does not necessarily reflect the amount of work he was doing. (*Id.* at 7-8.) Third, Henderson argues that the ALJ improperly found that Henderson's activities of daily living were not fully consistent with his statement's regarding his limitations and physical impairments because these activities differ from those required for substantial work. (*Id.* at 8-9.) Finally, Henderson argues that the ALJ's findings are inconsistent with the medical evidence because Henderson states numerous times throughout the record that he is in constant pain. (*Id.* at 9.)

By contrast, the Commissioner alleges that the ALJ provided valid bases for finding Henderson not fully credible. (ECF No. 20 at 6-11.) Specifically, the Commissioner highlights the ALJ's discussion of Henderson's work history, medication treatment, objective medical evidence, and activities of daily living. (*Id.*)

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, an ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, the ALJ determines whether there is "objective

medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Vasquez v. Astrue*, 572 F.3d 586, 691 (9th Cir. 2009)). If there is such evidence, then the ALJ "may not discredit [the] claimant's testimony of pain and deny disability solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc). Instead, at the second step of the analysis, unless there is affirmative evidence that the claimant is malingering, the ALJ must give "specific, clear and convincing reasons" before discrediting the claimant's testimony. *Molina*, 674 F.3d at 1112 (quoting *Vasquez,* 572 F.3d at 591). To support a finding of less than fully credible, the ALJ is required to point to specific facts in the record that demonstrate that the individual's symptoms are less severe than they claim. *See Vasquez*, 572 F.3d at 592 (internal citation omitted).

"In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evidence.'" *Id.* (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)). For example, the ALJ may consider the claimant's reputation for truthfulness, prior inconsistent statements, inconsistencies between the claimant's testimony and their conduct, an unexplained or inadequately explained failure to seek treatment, the claimant's daily activities, the claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms. *See Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

At step one of the two-step process, the ALJ determined that Henderson had a medically determinable impairment that could reasonably be expected to cause some degree of the alleged symptoms. At step two, the ALJ found that Henderson's subjective testimony was not full credible. Because the record does not contain any affirmative evidence of malingering, the ALJ is required to provide clear and convincing reasons to discredit Henderson's testimony. *See Lingenfelter*, 504 F.3d at 1036. "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness,

inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Astrue,* 495 F.3d at 636.

Despite Henderson's allegations to the contrary, the ALJ provided clear and convincing reasons for finding him not fully credible. The ALJ cited four reasons for partially discrediting Henderson's testimony, including: (1) inconsistency with Henderson's orthopedic allegations; (2) inconsistency with Henderson's work activities; (3) inconsistency with Henderson's activities of daily living; and, (4) inconsistency with the objective medical evidence which showed Henderson's symptoms are relatively stable and are being managed by the prescribed treatment. (AR at 22-26.)

The first and fourth reasons mentioned by the ALJ in rejecting Henderson's testimony are that Henderson's physical health symptoms improved with medication and prescribed treatment and that the medical records do not support the degree of severity. (AR 22.) An impairment that can be effectively controlled with treatment is not disabling. *Warre v. Comm'r, Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Further, while subjective pain testimony may not be rejected solely because it is not corroborated by objective medical findings, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effect. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 416.929(c)(2). In finding five, the ALJ cited a number of medical records supporting the conclusion that Henderson's physical health improved with the prescribed treatment and Henderson is not as disabled as alleged. (AR 22.) This constitutes substantial evidence supporting clear and convincing reasons for the negative credibility finding.

Henderson argues the ALJ misinterpreted and exaggerated some of the records. (ECF No. 15 at 4-9.) This argument has already been addressed by the Court in section A. As noted above, the ALJ, not this Court, is responsible for reviewing the evidence and resolving conflicts or ambiguities. *Tommasetti*, 533 F.3d at 1041; *Magallanes*, 881 F.2d at 751. As a result, evidence of improvement with treatment and objective evidence

reflecting a lesser degree of symptoms than alleged was properly considered by the ALJ and these are clear and convincing reasons supported by substantial evidence for rejecting Henderson's credibility.

The second reason cited by the ALJ in rejecting Henderson's credibility is that he "worked and appears to have engaged in substantial gainful activity up until 2014" which undermines the alleged severity of his symptoms. (AR 22.) Henderson argues that the ALJ did not take into account Henderson's ownership of the business and the latitude that afforded him when it came to employment activities. (ECF No. 15 at 8.) In weighing a claimant's credibility, an ALJ may consider the claimant's prior work record and effort to work. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Additionally, self-employment can constitute substantial gainful employment. *See generally Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001). However, past the determination of whether self-employment constituted substantial gainful employment, there is no requirement that the ALJ consider the potential nuances that self-employment may afford a claimant. Thus, the ALJ properly considered Henderson's prior record of employment when assessing his credibility.

Finally, the third reason cited to by the ALJ in rejecting Henderson's credibility is that his daily activities like cooking, cleaning, caring for his dogs, doing laundry, and lawn work undermined his complaints of disability. (AR 22.) Henderson's own testimony supports this finding, as do the evaluation assessments he and his wife filled out. (AR 39-54, 298-305, 315-322.) The record shows that Henderson can run errands to and from the post office and courthouse, walk his two dogs and pick up their excrement from the yard, take care of his personal hygiene, make his own meals, dust, fold laundry, go out alone, watch television, drive, go to his mother-in-law's home for dinner, load the dishwasher, mow the lawn on a riding lawn mower, water plants, and go camping on occasion. (*Id.*) The ALJ concluded that Henderson's "activities of daily living are not consistent with the alleged severity of his physical symptoms." (AR 22.) Here, the ALJ could reasonably infer that Henderson could not perform these activities if he had the

extent of incapacity he claimed. *See Fair v. Brown*, 885 F.2d 597, 604 (9th Cir. 1989) (the ability to attend to personal needs, household chores, household duties, and transportation was considered, *inter alia*, to be sufficient to reject allegations of disabling pain); *see also Thomas*, 278 F.3d at 959.

The ALJ provided specific, clear, and convincing reasons for declining to credit Henderson's testimony, and his credibility finding is supported by substantial evidence. *See Fair*, 885 F.2d at 604 ("Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.") Accordingly, the Court finds and concludes that the ALJ did not arbitrarily discredit Henderson's testimony.

### C. Transferrable Skills

Finally, Henderson argues that the ALJ's transferrable skills analysis in his RFC finding is flawed because it failed to take into consideration the amended date of onset. (ECF No. 15 at 10.) As a result, Henderson argues the ALJ improperly questioned the VE only about transferrable skills generally rather than for a narrow range of jobs as required by 20 CFR 404.1568(d)(4) for "advanced age." (*Id.*) Meanwhile, the Commissioner argues that any questions regarding transferrable skills are immaterial because the ALJ found that Henderson remains capable of performing his past relevant work. (ECF No. 20 at 11-12.)

Step four of the sequential analysis requires a finding of no disability if the claimant is capable of performing past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). The ALJ need not demonstrate that the claimant's past relevant work exists in significant numbers in the national economy in order to support a finding of no disability. *Barnhart v. Thomas*, 540 U.S. 20, 25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003).

Henderson's past relevant work included a job as a bail bondsman. The VE testified that a job as a bail bondsman was consistent with Henderson's RFC. (AR 56-57.) The ALJ relied on the VE's testimony in determining Henderson was capable of

performing past relevant work. (*Id.* at 22.) Thus, the ALJ concluded Henderson was not disabled at step four of the sequential analysis. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). Henderson does not dispute the RFC determination nor does he dispute the ALJ's determination of no disability at step four of the sequential analysis. (ECF No. 15.) In light of this, the ALJ's conclusion that Henderson was not disabled at step four of the sequential analysis is supported by substantial evidence.

In addition to concluding Henderson was not disabled at step four of the sequential analysis, in the alternative, the ALJ found at step five that Henderson was not disabled. (AR 26.) The ALJ relied on the VE's testimony that, considering Henderson's RFC, age, education, and work experience, Henderson was capable of performing jobs that existed in significant numbers in the national economy. (*Id.*) Henderson argues that this testimony was not reliable as it did not account for the amended onset date which put Henderson in the "advanced age" category. (ECF No. 15 at 10.)

The age of a disability claimant "is to be determined at the time of the Secretary's final decision." *Russell v. Bowen*, 856 F.2d 81, 83-84 (9th Cir. 1988). At the time of the ALJ's final decision (November 23, 2016), Henderson was 57 years old, definitively falling into the "advanced age" category. To find individuals of advanced age (age 55 or over) not disabled "they must have acquired skills from their past work that are transferable to skilled or semiskilled work." *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990); *see also* 20 C.F.R. §§ 404.1568(d)(4), 416.968(d)(4). Generally, individuals of advanced age that are limited to sedentary work will be considered disabled when they cannot return to their past relevant work, unless they have transferable skills or some education which provides direct entry into skilled work. *See* 20 C.F.R. § 404.1563(d); *see also Bray v. Comm'r of SSA*, 554 F.3d 1219, 1224-1225 (9th Cir. 2009).

The ALJ found that Henderson had acquired skills in his past work that were transferable to other skilled or semi-skilled jobs, and in the absence of legal error this Court will not disturb the ALJ's findings which were supported by substantial evidence.

At the hearing, the ALJ called the VE to testify about Henderson's past relevant

work and his transferable skills. The testimony was as follows:

> Q. All right. Can you please describe the Claimant's past work?
>
> A. Bail agent, 186.267-010, exertional level sedentary, SVP: 6. Driver instructor, 099.223-010, exertional level light, SVP: 4. Delivery driver, 905.663-014, exertional level medium, SVP: 4, as performed, medium.
>
> Q. Okay. All right. Ms. Benson-Deham, the Claimant is age 56, are there any transferrable skills from his past relevant work to other light sedentary work and if so, what skills are they?
>
> A. That would be from his work primarily as a bail agent. That would be records management, computer skills, data entry, verbal and numerical recording and record keeping, customer service, information giving, investigating.
>
> Q. Okay. And do any of those transferrable skills transfer to any type of skilled or semi-skilled jobs? Would you say?
>
> A. Semi-skilled?
>
> Q. Yeah, or semi-skilled?
>
> A. Yeah, I'm sorry. I thought you said unskilled.
>
> Q. No, no.
>
> A. And it threw me for a second.
>
> Q. No, no. Skilled or semi-skilled.
>
> A. Yes, Your Honor.
>
> [sic]
>
> Q. Okay. And is there any other work the individual could perform, and on this question I'd be interested in type of jobs that would be semi-skilled, no just unskilled work. Based on those transferrable skills.
>
> A. Yes. Collector, 241.367-010, exertional level light, SVP: 4, approximately 100,000. Case aide, 195.367-010, exertional level light, SVP: 3, approximately 147,000. Gate guard, 372.667-030, exertional level light, SVP: 3, approximately 500,000.

15

(AR 56-57.)

The ALJ made sufficient findings in his determination involving Henderson's transferability of skills. The ALJ asked the VE about the specifics skills actually acquired by Henderson and the specific occupations on which those skills are transferable. (AR 56-57). In making his transferability determination, the ALJ relied upon the VE's testimony that Henderson's past relevant work as a bail bondsman required skills of management, computer skills, data entry, verbal and numerical recording and record keeping, customer service, information giving, and investigating. (AR 26-27, 56-57.) The ALJ stated that the VE had identified three jobs with an SVP of at least three, meaning those jobs were more demanding than unskilled work and would take over one month and up to and including three months of specific vocational preparation to learn. (AR 26-27.) The Court has reviewed the jobs to which the VE testified Henderson could transfer, and finds no error in the ALJ's reliance on the positions the VE offered. For the following reasons, the Court is persuaded that the ALJ applied the correct legal standard to determine Henderson's transferable skills and that the ALJ's findings were supported by substantial evidence.

## IV. CONCLUSION

Having reviewed the Administrative Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's conclusion, the Court finds that the ALJ's decision is supported by substantial evidence and affirms the ALJ's findings. The Court therefore recommends that Henderson's motion for remand (ECF No. 15) be denied, and that the Commissioner's cross-motion to affirm (ECF No. 20) be granted.

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

**V.    RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for remand (ECF No. 15) be **DENIED** and Defendant's cross-motion to affirm (ECF No. 20) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

Dated: February 14, 2019.

_____
**UNITED STATES MAGISTRATE JUDGE**